IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENTON S. COOK,

              Plaintiff,

vs.                                                 Case No. 22-3068-SAC

DAN SCHNURR,
et al.,

              Defendants.

**O R D E R**

Plaintiff, pro se, has filed this action on forms for bringing a civil rights complaint pursuant to 28 U.S.C. § 1983.[1] Plaintiff alleges violations of his constitutional rights in relation to his incarceration by the Kansas Department of Corrections. This case is before the court for the purposes of screening plaintiff's complaint pursuant to 28 U.S.C. § 1915A. The court shall also rule upon plaintiff's motion for appointment of counsel. Doc. No. 2.

I. Screening standards

Section 1915A requires the court to screen complaints filed by prisoners seeking redress from a governmental entity or officer or employee of a governmental entity. The court is to dismiss a

---

[1] Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . causes to be subjected, any citizen of the United States . . . to the deprivation of by rights, privileges, or immunities secured by the Constitution and laws [of the United States]."

1

case or portions thereof if the court determines that a claim is frivolous or malicious or fails to state a claim on which relief may be granted. A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a pro se litigant must follow the same procedural rules as any other litigant. See Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). The court will not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [a pro se] plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

When deciding whether plaintiff's complaint "fails to state a claim upon which relief may be granted," the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court accepts the plaintiff's well-pled factual allegations as true and views them in the light most favorable to the plaintiff. United States v. Smith, 561 F.3d 1090, 1098 (10th Cir. 2009). The court may also consider the exhibits attached to the complaint. Id. The court, however, is not required to accept legal conclusions alleged in the complaint as true. Iqbal, 556 U.S. at 678. "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the

2

elements of a cause of action' will not suffice" to state a claim. Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting Twombly, 550 U.S. at 555).

II. The complaint

Plaintiff alleges that he injured his knee in 2007 while in state custody, reinjured the knee in 2008, and then was diagnosed with a torn ACL. Plaintiff asserts that, in the passing years, he has been to the clinic more than 20 times. He has had x-rays and twice had physical therapy. He has lost weight and has worn knee sleeves at least four times. Plaintiff has also taken various pain medications while in prison. He claims he had an MRI in September 2021 which showed no ACL and two meniscus tears. Plaintiff asserts that he is in constant pain, but that he has been denied treatment. He asserts that surgery is needed to repair his knee. Plaintiff does not describe his treatment or document his diagnosis since the September 2021 MRI.

Plaintiff filed a grievance in July 2021 which is an exhibit to the complaint. Plaintiff states in the grievance that his most current x-ray showed "narrowing of the space in [the] knee, possible arthritic deterioration." Doc. No. 1-1, p. 2.

Nurse Debra Lundry, a defendant named in the complaint, responded to the grievance in August 2021. She said that plaintiff's previous requests for MRIs had been returned "with alternative treatment plan requested." Doc. No. 1-1, p. 4. She

3

noted that there was an "outside referral pending in Topeka for . . . physical therapy." Id.  She also remarked that plaintiff's x-rays from March 2021 were "essentially normal" and that plaintiff's knee exam did not support the request for an MRI.  She quoted the following findings:

> Left Knee exam:  Normal clinical alignment, no swelling, no effusion, no ecchymosis, no erythema, normal patellar glide, negative pivot shift, negative reverse pivot shift, negative extensor lag, negative Lachman, negative anterior and posterior drawer, negative medial and lateral McMurray's negative laxity with varus and valgus.  Mild tenderness upon palpation to Lt Upper patella.  Mild crepitus noted.  Strength 5/5 to LE and DTR 2 + to LE.

Doc. No. 1-1, p. 4.  Plaintiff has written that these findings are "not true" and "never happened."  Id.  Lundry also stated plaintiff's case was being followed in care management and that approval for an MRI might be obtained with recommendations from physical therapy.  Id.

Another document attached to the complaint is a response to a contact from plaintiff's "advocate."  Doc. No. 1-1, p. 6.  This response, dated August 10, 2021, reviews plaintiff's complaints of knee pain, instability and popping out of place during a medical examination on July 7, 2021.  Still, the examination "showed normal alignment with no swelling [or] effusion."  Id.  "Strength was 5/5 and reflexes were normal."  Id.  It also stated that plaintiff "had a knee x-ray on 3/8/2021 which was interpreted as normal except for joint space narrowing."  The reviewer suggested that an

4

MRI be considered if the intent was to refer plaintiff for surgical repair.

Defendant Dan Schnurr, the warden of Hutchinson Correctional Facility (HCF), stated in October 2021 that he read and concurred with defendant Lundry's response to plaintiff's grievance. Plaintiff is suing defendant Schnurr on that basis.

Defendant Lundry is being sued for refusing plaintiff medical treatment and refusing or ignoring MRI requests. Plaintiff also sues Carmen Bayhiam and Michelle Tunnell. These are nurses at HCF. Plaintiff asserts that defendant Bayhiam failed to order an MRI (although she told plaintiff that she did) and negligently performed a knee exam. Plaintiff asserts that defendant Tunnell failed to record plaintiff's reports of his symptoms and negligently performed knee examinations. Plaintiff also lists Centurion, the health services provider at HCF, as a defendant.

Plaintiff asks for compensatory and punitive damages as well as injunctive relief.

III. Screening

The court interprets plaintiff's complaint as attempting to allege an Eighth Amendment violation. To state a claim for an unconstitutional denial of medical care under the Eighth Amendment, plaintiff must allege facts plausibly showing that a defendant acted with deliberate indifference towards his serious medical conditions. Prince v. Sheriff of Carter County, 28 F.4th

1033, 1043 (10th Cir. 2022).  This requires facts plausibly demonstrating the "objective severity of the harm suffered as well as the subjective mental state of the defendant with respect to such harms."  Id. at 1043-44.  "The objective component examines whether the medical condition or harm claimed by the inmate was 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause . . . . [The] subjective component analysis then considers whether the defendant knew of and disregarded the serious risk to the inmate's health."  Id. at 1044 (quoting Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009)).

"A medical condition is 'sufficiently serious' when 'the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Id. (quoting Al-Turki v. Robinson, 762 F.3d 1188, 1192-93 (10th Cir. 2014)).  The court will assume in this order that the complaint plausibly alleges a "sufficiently serious" medical condition.

As for the subjective component, the Tenth Circuit has stated:

> In analyzing the subjective component of deliberate indifference, we consider evidence of the prison official's culpable state of mind, and are satisfied when the record evidence establishes that the official knows of and disregards an excessive risk to inmate health or safety.

Id. at 1045 (interior quotations and citations omitted).  A plaintiff need not prove that a defendant had actual knowledge of

6

the health risk or that a defendant actually intended the plaintiff to be harmed. Mata v. Saiz, 427 F.3d 745, 752 (10th Cir. 2005). It is sufficient if circumstantial evidence supports an inference that a defendant failed to verify or confirm a risk that he strongly suspected to exist. Id. Liability cannot be founded, however, merely upon a claim of supervisory liability without a supervisor's personal participation. See Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). There must be an affirmative link between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction, or failure to supervise. Id.

A reasonable inference that a defendant strongly suspected or had actual knowledge of a serious health risk cannot be drawn when an inmate voices a mere disagreement with a diagnosis or a prescribed course of treatment. Perkins v. Kan. Dept. of Corr., 165 F.3d 803, 811 (10th Cir. 1999). Claims sounding in the state law theories of negligence or medical malpractice will not support a recovery under the Eighth Amendment. See Self v. Crum, 439 F.3d 1227, 1235 (10th Cir. 2006).

The Tenth Circuit has described the deliberate indifference standard as "a high evidentiary hurdle." Id. at 1232.

> [T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or

7

> undertake additional medical testing. . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted. . ."

Id. at 1232-33.

Plaintiff's allegations indicate that over many years he has had treatment consistent with his symptoms and that his condition has been monitored while he has been in the Kansas correctional system. He states that he has been to the clinic more than 20 times, had multiple examinations, multiple x-rays, different pain medications, physical therapy twice, four knee sleeves and an MRI.[2]

Plaintiff broadly alleges without specific description or documentation that defendant Lundry refused plaintiff medical treatment approved by other authorities, ignored MRI requests by staff employed to make treatment recommendations, and ignored years of complaints, exams and medical requests. Plaintiff asserts that Lundry relied instead on "one knee exam that showed incorrectly that my knee was good." Doc. No. 1, p. 5. The complaint and the attached materials, however, indicate that while he was at HCF, plaintiff had knee exams in March and July of 2021 and perhaps other dates, and that he had an MRI in September of 2021.

---

[2] Plaintiff has changed correctional facilities over time. He indicates that in his complaint he is focusing upon events at HCF during the last few years. It is somewhat unclear, however, what was done or not done at HCF.

8

The complaint's allegations are not sufficient to state a plausible Eighth Amendment claim against defendant Lundry. Given the course of treatment and monitoring described in the complaint, plaintiff's disagreement with Lundry's diagnosis or interpretation of medical results is not sufficient to support a cause of action. Moreover, the fact that plaintiff received an MRI in September 2021, and Lundry's August 2021 comment that "we" may get approval for an MRI with recommendations from physical therapy, suggests that she was not the final decisionmaker on whether plaintiff received an MRI.[3]

As for defendant Schnurr, plaintiff may not state a claim merely because he adopted Lundry's opinion in response to plaintiff's grievance, particularly when plaintiff has not plausibly alleged anything more than that Schnurr was made aware of plaintiff's disagreement with Lundry's diagnosis and course of treatment. The Tenth Circuit has held that communicating grievances to a warden will not attach liability when the warden's response signifies nothing more than a reasonable reliance on the judgment of prison medical staff. Phillips v. Tiona, 508 Fed.Appx. 737, 744 (10th Cir. 2013); Arocho v. Nafziger, 367 Fed.Appx. 942, 956 (10th Cir. 2010).

---

[3] She stated in response to plaintiff's grievance that: "We will get physical therapy to make some recommendations that we may possibly get the approval for [an] MRI to determine the cause of your continuation of pain." Doc. No. 1-1, p. 4.

9

Plaintiff's claims against defendants Bayhiam and Tunnell are not supported by facts which plausibly show deliberate indifference to a serious medical need. Rather, plaintiff only alleges poor training, improper knee exams and bad recordkeeping. Plaintiff's allegations may support a claim of negligence but not an Eighth Amendment claim against Bayhiam and Tunnell.

Finally, the complaint contains no specific allegations against Centurion. While Centurion may be considered as a person acting under color of state law for purposes of § 1983, it may not be held liable based upon respondeat superior – that is, solely because it employs someone who violated the Constitution. See Rascon v. Douglas, 718 Fed.Appx. 587, 589-90 (10th Cir. 2017); Spurlock v. Townes, 661 Fed.Appx. 536, 545 (10th Cir. 2016). Plaintiff must allege facts showing a Centurion policy or custom that caused his injury. Spurlock, 661 Fed.Appx. at 545. The complaint fails to do so.

IV. Motion to appoint counsel

Plaintiff has filed a motion seeking appointment of counsel. Doc. No. 2. In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004). "It is not enough 'that having counsel appointed

would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case.'" Steffey v. Orman, 461 F.3d 1218, 1223 (10th Cir. 2006)(quoting Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995)).  Here, the court understands that plaintiff may face some obstacles in presenting the facts and law concerning his case.  But, this is a relatively simple case and, at this point in time, the court is not convinced that appointment of counsel is warranted.  Considering all of the circumstances, including that the merits of the case are unclear, the court shall deny plaintiff's motion for appointment of counsel without prejudice to plaintiff renewing his request at a later point in this litigation.

V. Conclusion

   For the above-state reasons, the court shall grant plaintiff time until June 3, 2022 to show cause why this case should not be dismissed or to file an amended complaint which corrects the deficiencies found in the original complaint. An amended complaint should be printed on forms supplied by the Clerk of the Court which may be supplemented.  Failure to respond to this order may result in the dismissal of this case.  Plaintiff's motion for appointment of counsel (Doc. No. 2) is denied without prejudice to plaintiff renewing the request later in this litigation.

**IT IS SO ORDERED.**

Dated this 3rd day of May 2022, at Topeka, Kansas.

        s/Sam A. Crow
        U.S. District Senior Judge